UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TERRY DONALD RUTLEDGE, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:24-CV-628-JD-SLC |
| S. GUAJARDO, et al., | |
| Defendants. | |

OPINION AND ORDER

Terry Donald Rutledge, a prisoner without a lawyer, was ordered to show cause why the initial partial filing fee has not been paid. (ECF 5.) Based on his recent filing in another case reflecting that he has a substantial negative balance on his trust account (*see Rutledge v. Estes, et al.*, No. 3:24-CV-621-JTM-JEM, ECF 5), the case will proceed to screening under 28 U.S.C. § 1915A. He is reminded that he remains obligated to pay the full filing fee over time in accordance with 28 U.S.C. § 1915(b)(2).

As required by 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Rutledge is proceeding without

counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## FACTS

Rutledge is an inmate in the Westville Control Unit. He claims that in March 2024, he was in a very "deep depression" and tried to commit suicide with a piece of saran wrap left on his dinner tray by Sergeant P. Tapscott. He claims it violated policy to give him the saran wrap because he was on suicide watch and that the officer suffered some type of disciplinary action as a result.

On or about March 30, Officer S. Guajardo and Sergeant Tapscott were passing out breakfast trays in Rutledge's unit. They tried to give him a sack lunch with a peanut butter sandwich, even though he had a documented peanut allergy. He claims his "peanut allergy Kosher tray" was on the cart, but they refused to give it to him. He claims they were angry with him for getting Sergeant Tapscott in trouble over the saran wrap. They told him he could take the sack lunch or "starve." He tried to grab his peanut-free food tray off the cart but was unsuccessful. Sergeant Tapscott then sprayed him with mace.

Sergeant Guajardo asked him if he wanted a decontamination shower and he replied that he did. She, along with Officer J. Lehman and Officer J. Wolters, began escorting him to the shower, but Rutledge could hear another inmate in a cell nearby yelling that he was going to throw urine and feces on Rutledge when he passed by. He told the officers he changed his mind about the shower, but they began dragging and

pulling him toward the other inmate's cell, causing his arm to cut open. They then twisted his arm and he heard a "pop" causing severe pain in his arm.

The officers allegedly continued to drag him toward the other inmate's cell, and when he was in front of the cell, the inmate threw urine and feces on him while the officers allegedly hid behind him. They then took him to the shower but refused to turn the water on so he could rinse off. They ultimately put him back in his cell without a shower and he stayed there until shift change, when a non-party officer provided him a shower and medical care. He claims he later found out that the officers intentionally left the other inmate's food slot open and gave the inmate an extra food tray so he would throw urine and feces on Rutledge. Based on these events he sues Officer Guajardo, Officer Lehman, Officer Wolters, and Sergeant Tapscott for money damages.

## ANALYSIS

Under the Eighth Amendment, inmates cannot be subjected to excessive force. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.*

Giving Rutledge the inferences to which he is entitled at this stage, he has alleged a plausible excessive force claim against the four officers. The complaint can be read to allege that Sergeant Tapscott sprayed him with mace because he was angry Rutledge

got him in trouble for leaving saran wrap on his tray. This officer may have been justified in taking some action to restore order after Rutledge tried to swipe food off the cart, but Rutledge's allegations suggest the officer went beyond what was necessary under the circumstances. He also plausibly alleges that the officers refused to turn the water on in the shower to purposely prolong the effects of the mace in order to punish him. Likewise, he claims that Officers Guajardo, Lehman, and Wolters used more force than was necessary in dragging him toward the shower, causing injury to his arm. He has alleged enough to proceed on an excessive force claim against the four officers.

He also purports to bring claims against the officers for "failure to intervene." State actors "who have a realistic opportunity to step forward and prevent a fellow [state actor] from violating a plaintiff's rights through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). It is unclear from his allegations who he is seeking to hold liable under this theory, and the court has permitted him to proceed against all four officers for the use of excessive force. The court finds that his allegations are more appropriately analyzed in the context of an excessive force claim, rather than a failure to intervene claim. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (constitutional claims must be analyzed under the most "explicit textual source of constitutional protection"). Furthermore, Rutledge can have "but one recovery" against the officers, *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012), and his case "gains nothing by attracting additional constitutional labels" with minimal applicability. *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).

He also sues the officers for failing to protect him from harm. The Eighth Amendment imposes a duty on prison officials to take "reasonable measures" to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). At the same time, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must show that the defendant "acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008).

Rutledge satisfies this standard. He claims the four officers were aware the other inmate was going to throw urine and feces on him, and in fact took steps to encourage and facilitate the attack.[1] As a result, he was attacked by this other inmate. He will be permitted to proceed further on this claim.

The complaint can also be read to allege the denial of medical care. The Eighth Amendment entitles inmates to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a prisoner must allege (1) he had an

---

[1] He does not expressly allege that Sergeant Tapscott participated in dragging him toward the other inmate's cell, but his complaint can be read to allege that this officer was part of the alleged scheme to have the other inmate throw urine and feces on him.

5

objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted).

Giving Rutledge the inferences to which he is entitled, he alleges a plausible denial of medical care claim against the defendants. Specifically, he claims that he was suffering ill effects from the mace and also had a painful arm injury, but the defendants allegedly ignored his requests for medical assistance and left him in his cell.[2] The complaint can be read to allege they denied him medical care because they were angry about the saran wrap incident. He will be permitted to proceed further on this claim.

He also purports to sue all four defendants for "conditions of confinement," but again, his allegations must be analyzed under the most "explicit textual source of constitutional protection." *Graham*, 490 U.S. at 395. The court finds that his allegations

---

[2] He claims that a nurse came to talk to him but was rude and dismissive of his medical needs. He does not name her as a defendant and so the court does not analyze any potential claim involving the nurse. Despite the visit from the nurse, it can be plausibly inferred from his allegations that the defendants were aware he was locked in his cell with an injury to his arm and suffering the effects of the mace.

are more appropriately analyzed in the context of excessive force, failure to protect, and denial of medical care claims, not for the denial of adequate conditions of confinement.[3]

He also purports to sue the defendants for "retaliation." To state a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

Rutledge phrase-drops the term "retaliation" but does not describe any protected First Amendment activity he engaged in, such as filing a grievance or lawsuit. *Holleman v. Zatecky*, 951 F.3d 873, 879 (7th Cir. 2020). He attaches grievances to his complaint (ECF 1-1), but they were filed *after* these events occurred. The court cannot plausibly infer that the officers retaliated against him for grievances he had not yet filed. Instead, his claim appears to be that the officers sprayed him with mace, injured his arm, and encouraged another inmate to attack him because they were angry about his suicide attempt with the saran wrap. The court considered these allegations in determining whether he stated excessive force and failure to protect claims, but they do not give rise to a plausible First Amendment claim.

He also states that he is suing the officers for battery. A state law tort claim would implicate the Indiana Tort Claims Act ("ITCA"). IND. CODE § 34-13-3 *et seq.* The

---

[3] The court notes that being denied one meal or one shower does not give rise to a conditions of confinement claim. *See Hardeman v. Curran*, 933 F.3d 816, 823–24 (7th Cir. 2019); *Jaros*, 684 F.3d at 671.

7

ITCA prohibits tort suits against government employees personally for conduct within the scope of their employment. *See* IND. CODE § 34-13-3-5(b); *see also Katz-Crank v. Haskett*, 843 F.3d 641, 648 (7th Cir. 2016) ("[T]he Indiana Tort Claims Act confers on public employees a broad immunity from suit for acts committed within the scope of their employment."); *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."). It is evident that the defendants were acting within the scope of their employment as state correctional employees during the events described in the complaint. Under state law, they are shielded from personal liability.[4] *Ball*, 760 F.3d at 645.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Officer S. Guajardo, Officer J. Lehman, Officer J. Wolters, and Sergeant P. Tapscott in their personal capacity for monetary damages for using excessive force against him in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Officer S. Guajardo, Officer J. Lehman, Officer J. Wolters, and Sergeant P. Tapscott for monetary damages for denying him medical care in violation of the Eighth Amendment;

---

[4] The ITCA would not bar a claim against their employer, the Indiana Department of Correction, but a claim for damages against this state agency would be barred by the Eleventh Amendment in federal court. *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008).

(3) GRANTS the plaintiff leave to proceed against Officer S. Guajardo, Officer J. Lehman, Officer J. Wolters, and Sergeant P. Tapscott for monetary damages for failing to protect him from being harmed by another inmate in violation of the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer S. Guajardo, Officer J. Lehman, Officer J. Wolters, and Sergeant P. Tapscott at the Indiana Department of Correction and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(6) ORDERS the Indiana Department of Correction to provide the U.S. Marshals with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(7) ORDERS Officer S. Guajardo, Officer J. Lehman, Officer J. Wolters, and Sergeant P. Tapscott to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this order.

SO ORDERED on December 12, 2024

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT